**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| HUDDLE HOUSE, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:12-CV-03239-RWS |
| TWO VIEWS, INC., JOHN : | |
| BARTHOLOMEW, and : | |
| ELIZABETH BARTHOLOMEW, : | |
| : | |
| Defendants. : | |

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss Counts VI, VII and IX of Plaintiff's Complaint [4]. After reviewing the record, the Court enters the following Order.

## **Background**[1]

This case arises out of a failed franchise relationship between Plaintiff and Defendants. On or about May 8, 2009, Plaintiff entered into a franchise agreement with Defendant Two Views, Inc. ("Defendant TVI") (the "Franchise Agreement"), whereby Defendant TVI agreed, among other things, to operate a

---

[1] Because the case is before the Court on a motion to dismiss, the Court accepts as true the facts alleged in the Complaint. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

Huddle House franchise in Oak Island, North Carolina. (Compl., Dkt. [1] ¶ 8.) At the same time, Defendants John and Elizabeth Bartholomew executed a Guaranty and Shareholders' Guaranty and Agreement (collectively, the "Guaranty"), whereby they each, individually and unconditionally, guaranteed the obligations of Defendant TVI under the Franchise Agreement. (Id. ¶ 9.)

Under the terms of the Franchise Agreement, Defendant TVI agreed to purchase certain products, including food, for its Huddle House franchise unit in accordance with the terms of Plaintiff's Food Purchasing Manual, which specifies the products franchisees are authorized to sell at their franchise units. (Id. ¶¶ 10-11.) Defendant TVI also agreed to the following under the terms of the Franchise Agreement: (1) that it would continuously operate its Huddle House franchise unit; (2) that in the event the Franchise Agreement was terminated, it would not, for a period of two years, own or manage any other restaurant business within a five mile radius of the restaurant subject to the Franchise Agreement; (3) that in the event the Franchise Agreement was terminated, it would pay Plaintiff $60,000.00 as liquidated damages; and (4) that it would pay Plaintiff for certain fees and expenses, including, e.g., product invoices, marketing fees, royalty fees, and finance charges. (Id. ¶¶ 12-15.)

2

On May 16, 2012, in accordance with its rights under the Franchise Agreement, Plaintiff inspected Defendant TVI's franchise unit.  (Id. ¶ 16.) During the inspection, Plaintiff discovered that Defendant TVI was possessing and selling a number of unapproved products.  (Id. ¶ 17.)  On May 24, 2012, Plaintiff sent Defendants a letter (the "First Default Letter") notifying them of their default under the Franchise Agreement by virtue of Defendant TVI's sale of unapproved products.  (Id. ¶ 18.)  In the First Default Letter, Plaintiff demanded that Defendant TVI cure its default within seven days by replacing the unapproved products with approved products.  (Id. ¶ 19.)  Defendants received the First Demand Letter but failed to cure the default.  (Id. ¶ 20.)

Plaintiff again inspected the premises on June 12, 2012 and determined that Defendant TVI was continuing to possess and sell many of the same unapproved products and additional unapproved products.  (Id. ¶ 21.) Accordingly, on June 15, 2012, Plaintiff sent Defendants a letter notifying them of their default under the Franchise Agreement for continuing to sell unapproved products (the "Second Default Letter").  (Id. ¶ 22.)  In this letter, Plaintiff demanded that Defendant TVI cure its default within seven days by replacing the unapproved products with approved products.  (Id. ¶ 23.)

3

Although Defendants received the Second Default Letter, they failed and refused to cure their default. (Id. ¶ 24.)

On June 28, 2012, Plaintiff attempted to inspect the premises for a third time, but Defendant TVI denied Plaintiff access to the back of the unit. (Id. ¶ 25.) Defendant TVI admitted, however, to continuing to use the same unapproved products. (Id. ¶ 26.) Consequently, by letter dated July 3, 2012, Plaintiff notified Defendants of their continuing default under the Franchise Agreement and terminated Defendant TVI's Franchise Agreement in accordance with the terms of the same (the "Termination Letter"). (Id. ¶ 26.) In the Termination Letter, Plaintiff also demanded that Defendant TVI immediately cease and desist operation of its Huddle House restaurant, return all proprietary items to Plaintiff, and de-identify the restaurant as a Huddle House. (Id. ¶ 27.) Plaintiff also demanded that Defendants immediately pay Plaintiff for its past-due financial obligations in the amount of $13,902.05, as well as the post-termination liquidated damages in the amount of $60,000.00. (Id. ¶ 28.)

Despite Defendants' receipt of the Termination Letter, Defendants failed and refused to return all proprietary items to Plaintiff and continue to possess

4

certain proprietary items of Plaintiff, including without limitation a software key to the Point-Of-Sale ("POS") system, which key allows Defendants to sell Plaintiff's proprietary products.  (Id. ¶ 29.)  Subsequent to Plaintiff's termination of the Franchise Agreement, Plaintiff discovered that Defendants were continuing to operate a restaurant at the very same location under the name "The Gravy Boat" and were using items bearing Plaintiff's logos in connection therewith.  (Id. ¶ 30.)  Thus, on July 9, 2012, Plaintiff sent Defendants a letter demanding that they immediately cease and desist operation of "The Gravy Boat" because such conduct violated their post-termination non-compete obligations under the Franchise Agreement (the "Cease and Desist Letter").  (Id. ¶ 31.)  Plaintiff also demanded that Defendant cease using Plaintiff's federally protected trademarks.  (Id. ¶ 32.)

Despite their receipt of the Cease and Desist Letter, Defendants continue to operate "The Gravy Boat" and continue to use Plaintiff's federally protected trademarks and proprietary items in connection with their operation of "The Gravy Boat."  (Id. ¶ 33.)  Additionally, Defendants have failed and refused to satisfy their financial obligations to Plaintiff pursuant to the terms of the Franchise Agreement and Guaranty and those amounts continue to accrue.  (Id.

¶ 34.)

In the Complaint, Plaintiff asserts the following claims and requests for relief: interlocutory injunction and/or temporary restraining order (Count I); breach of contract (Counts II & III); trademark and service mark infringement and trading on the identity of another (Count IV); deceptive trade practices (Count V); unjust enrichment (Count VI); negligence (Count VII); attorneys' fees (Count VIII); and punitive damages (Count IX).  Defendants now move to dismiss Counts VI, VII, and IX for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  The Court sets out the legal standard governing Defendants' motion before considering it on the merits.

## Discussion

### I.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

**II.    Analysis**

7

As stated above, Defendants move to dismiss Plaintiff's claims for unjust enrichment (Count VI), negligence (Count VII), and punitive damages (Count IX). The Court considers Defendants' motion as to each claim, in turn.

A.  Unjust Enrichment (Count IV)

In support of its claim for unjust enrichment, Plaintiff alleges, in summary fashion, that "Defendants have been unjustly enriched and have been conferred a benefit which, in good conscience and equity, Plaintiff ought to be compensated for." (Compl., Dkt. [1] ¶ 63.) Defendants move to dismiss this claim on two grounds, first, on grounds that Plaintiff cannot state a claim for unjust enrichment when a legal contract exists and, second, on grounds that Plaintiff has failed to sufficiently plead the claim. (Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem."), Dkt. [4-1] at 6-8.) Plaintiff argues the following in response: first, Plaintiff argues that although "the bulk of its claim is grounded in the four corners of the Franchise Agreement, [Plaintiff] has the right to plead unjust enrichment as an alternative theory of recovery." (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Resp."), Dkt. [7] at 11-12.) Second, Plaintiff contends that it has sufficiently pled its claim by incorporating by reference, in its unjust enrichment Count, the preceding

8

sixty-one paragraphs of the Complaint.  (Id. at 11.)  Plaintiff points out, in particular, its allegations "that TVI had received, but not paid for, marketing benefits, royalty benefits and food products totaling $13,902.05 (Complaint ¶ 28); that TVI had been conferred a benefit through use of [Plaintiff]'s POS key, trademarks and service marks without having paid for it (Complaint ¶ 29); and that TVI was conferred other post-termination benefits that it indisputably has not paid for."  (Id. at 11.)

The Court agrees with Defendants that Plaintiff's claim for unjust enrichment fails as a matter of law.  Under Georgia law, "[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." Smith Serv. Oil Co. v. Parker, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001).  Although the Federal Rules of Civil Procedure generally permit a party to plead alternative and inconsistent claims, Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC, 426 F. Supp. 1356, 1371 (N.D. Ga. 2006) (citing Rule 8), the Georgia Court of Appeals has held that a party may not assert a claim for unjust enrichment in the alternative to a claim for breach of contract where "any benefit conferred on the defendants was triggered by a provision in the contract,

9

the validity of which neither [party] challenge[s]." Tidikis v. Network for Med. Commc'n & Research LLC, 619 S.E.2d 481, 486 (Ga. Ct. App. 2005). See also Goldstein v. Home Depot U.S.A., Inc., 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009) ("While a party may plead [the] equitable claim[ ] [of unjust enrichment] in the alternative, the party may only do so if one or more of the parties contests the existence of an express contract governing the subject of the dispute."). Cf. Clark v. Aaron's, Inc., No. 1:11-cv-04283-RWS, 2012 WL 4468747, at *5 (N.D. Ga. Sept. 26, 2012) ("In this case, contrary to those cited immediately above, [Plaintiff] has disputed the validity of the contracts at issue by alleging that they are void as unconscionable and in violation of statutory law. Accordingly, there [is] no impediment to [Plaintiff] pleading a claim for unjust enrichment in the alternative to her contract claims . . . .").

In this case, neither party disputes the existence or validity of the Franchise Agreement, which agreement governs the subject of the parties' dispute. Indeed, any of the benefits allegedly conferred on Defendants accrued only as a result of the Franchise Agreement. Thus, in accordance with the foregoing authority, Plaintiff's claim for unjust enrichment fails as a matter of

10

law and is **DISMISSED**.[2]

### B. Negligence (Count VII)

In support of its claim for negligence, Plaintiff alleges that "Defendants owed Plaintiff duties not to compete with Plaintiff and not to use Plaintiff's proprietary products, trademarks and logos" and that "Defendants breached their duty to Plaintiff by competing with Plaintiff and using Plaintiff's proprietary products, trademarks and logos." (Compl., Dkt. [1] ¶¶ 65-66.) Defendants move to dismiss this claim on grounds that it is barred by Georgia's economic loss rule. (Defs.' Mem., Dkt. [4-1] at 8-9.)

"The 'economic loss rule' generally provides that a contracting party who

---

[2] Moreover, in its unjust enrichment count (Count VI), Plaintiff incorporates by reference the preceding sixty-one paragraphs of the Complaint, which include allegations that the parties entered into the Franchise Agreement. (Compl., Dkt. [1] ¶ 62.) Courts have held that under these circumstances, where a party claims within a single count that an agreement existed and that the opposing party was unjustly enriched, the claim for unjust enrichment fails as a matter of law. E.g., Am. Casual Dining, 426 F. Supp. at 1372 ("Although [the plaintiff] argues that it is permissible to assert alternative and inconsistent claims, it cannot claim within a single count that there was an agreement and that the [defendant] was unjustly enriched."). Cf. Wesi, LLC v. Compass Envtl., Inc., 509 F. Supp. 2d 1353, 1363 & n.12 (N.D. Ga. 2007) (finding that defendants were entitled to assert counterclaim for unjust enrichment in the alternative to breach of contract because their counterclaim did not suffer from the "internal inconsistency" of "'claim[ing] within a single count that there was an agreement and that [the claimant] was unjustly enriched'" (quoting and distinguishing Am. Casual Dining, 426 F. Supp. 2d at 1372)).

11

suffers purely economic losses must seek his remedy in contract not in tort." Gen. Electric Co. v. Lowe's Home Centers, Inc., 608 S.E.2d 636, 637 (Ga. 2005).  Under the economic loss rule, "a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property . . . ."  Id.  Thus, "'where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold . . . the courts have adhered to the rule that purely economic interests are not entitled to protection against mere negligence, and so have denied recovery.'" Flintkote Co. v. Dravo Corp., 678 F.2d 942, 946 (11th Cir. 1982) (quoting Prosser, Law of Torts, 4th ed. (1971), p. 665) (collecting Georgia cases).  See also id. at 947 ("[The Georgia cases] indicate that the Georgia Court of Appeals has generally looked at the nature of the damages suffered by a plaintiff in determining whether suit may be brought in tort or only in contract. . . .  [T]he Georgia decisions addressing this issue have in almost all cases held that a plaintiff simply cannot recover in tort for economic losses resulting from the loss of value or use of the thing sold . . . .").

In this case, Plaintiff alleges solely economic damages arising from Defendants' alleged breach of the Franchise Agreement and misuse of

12

Plaintiff's trademarked property.  Thus, the Court agrees with Defendants that Plaintiff's claim for negligence is barred by the economic loss rule.  Plaintiff contends, on the contrary, that the economic loss rule does not bar its negligence claim because "[Plaintiff] has suffered losses resulting from injury to its property, and specifically [Plaintiff]'s trademarked property."  (Pl.'s Resp., Dkt. [7] at 12-13.)  The Court finds this argument unavailing.

Plaintiff has not cited any authority, and the Court has found none, supporting its contention that "injury" arising from trademark infringement constitutes "property damage" that is actionable in tort, notwithstanding the economic loss rule.  On the contrary, the foregoing authority demonstrates that damage to property that is actionable in tort despite the economic loss rule is that which arises from accident or other physical injury.  Thus, although Plaintiff alleges injury arising from the misuse of its intellectual property, the injury is solely pecuniary and therefore actionable only in contract, not in tort.  Plaintiff's claim for negligence is **DISMISSED**.

C.   Punitive Damages (Count IX)

Finally, Defendants move to dismiss Plaintiff's claim for punitive damages.  As stated in the Background section, supra, Plaintiff raises claims in

13

this litigation for breach of contract (Counts II & III); trademark and service mark infringement and trading on the identity of another (Count IV); and deceptive trade practices (Count V).[3] Defendants argue that punitive damages are not recoverable in connection with these causes of action. (Defs.' Mem., Dkt. [4-1] at 9-11.) Defendants also argue that "with respect to any claims arising out of the Franchise Agreement, the parties expressly waived any right to claim punitive or exemplary damages." (Id. (citing Compl., Ex. A (Franchise Agreement) ¶ 22(b)(iv), Dkt. [1] at 84 of 103).)

Plaintiff concedes that the parties have waived the right to claim punitive damages with respect to any claims arising out of the Franchise Agreement. (Pl.'s Resp., Dkt. [7] at 13-14.) Plaintiff also concedes that punitive damages are not recoverable for breach of contract or for violation of the Lanham Act, which the parties agree governs Plaintiff's federal trademark and service mark infringement claim (Count IV).[4] (Id. at 13.) Finally, Plaintiff does not oppose

---

[3] Plaintiff's claims for unjust enrichment (Count VI) and negligence (Count VII) have been dismissed. (See Parts II.A. & II.B., supra.)

[4] While conceding that "the Lanham Act does not appear to support punitive damages," in an apparent effort to avoid dismissal of its punitive damages claim, Plaintiff argues that the "Act does support treble damages." (Pl.'s Resp., Dkt. [7] at 14.) This, however, is immaterial to whether Plaintiff is entitled to punitive damages, as treble damages are separate and distinct from punitive damages.

14

Defendants' argument that punitive damages are not recoverable for deceptive trade practices (Count V). (Id. at 13-14.) Plaintiff contends, however, that its "other claims" support an award of punitive damages, namely, its claim for negligence and trademark infringement under Georgia law, O.C.G.A. § 10-1-450. (Id. at 14.) The Court disagrees for the following reasons.

First, the Court has dismissed Plaintiff's claim for negligence. (See Part II.B., supra.) In any event, it is well-settled that punitive damages are not recoverable for negligence. E.g., Duncan v. Klein, 720 S.E.2d 341, 347 (Ga. Ct. App. 2011) ("Negligence, even gross negligence, is inadequate to support a punitive damage award."). Second, assuming Plaintiff's Complaint asserts a claim for trademark infringement under Georgia law,[5] Plaintiff has cited no authority for the proposition that punitive damages are recoverable in connection with such a claim. On the contrary, O.C.G.A. § 10-1-450 provides specifically for the recovery of monetary damages in the form of "liquidated damages" or "actual damages" and makes no mention of punitive damages. In

---

[5] Defendants contend otherwise, pointing to Plaintiff's allegation that Defendants used Plaintiff's "'federally protected trademarks.'" (Def.'s Reply Mem. in Supp. of Mot. to Dismiss ("Def.'s Reply"), Dkt. [13] at 6-7 & n.2 (emphasis in original) (quoting Compl., Dkt. [1] ¶¶ 32-33).)

15

accordance with the principle of "expressio unuis est exclusio alteruis" ("the expression of one thing excludes all others"), the Court finds that the Georgia Legislature did not intend to make punitive damages available for violations of this Code section. Because none of Plaintiff's substantive causes of action can support an award of punitive damages, Plaintiff's claim for punitive damages is **DISMISSED**.

## Conclusion

In accordance with the foregoing, Defendant's Motion to Dismiss Counts VI, VII and IX of Plaintiff's Complaint [4] is **GRANTED**.

**SO ORDERED**, this  4th  day of April, 2013.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE